No. 39,186 and No. 39,217

JOHN T. BENNETT, THOMAS W. S. CLAY, HARVEY H. STROBEL, and BEN F. CRAIG, *Appellees* and *Cross-appellants*, v. P. L. SEIMILLER, *Appellant* and *Cross-appellee*, and GRAND LODGE OF INTERNATIONAL ASSOCIATION OF MACHINISTS, *Appellee*.

(267 P. 2d 926)

Opinion filed March 6, 1954.

*Edward J. Hickey, Jr.,* of Washington, D. C., argued the cause, and *Robert L. NeSmith, Justus H. Fugate,* and *Charles D. Anderson,* all of Wichita, and *Clarence M. Mulholland* and *William G. Mahoney,* both of Washington, D. C., were with him on the briefs for the appellant and cross-appellee, and for the Grand Lodge of the International Association of Machinists, appellee.

*L. M. Kagey,* of Wichita, argued the cause, and *Max L. Hamilton,* and *D. G. Hamilton,* both of Wichita, were with him on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

WEDELL, J.: This is an action by members of a local labor union to recover actual and punitive damages from an agent, a representative of the Grand Lodge of the International Association of Machinists, an unincorporated association of individuals, and from such Grand Lodge, for alleged slanderous statements made by its agent.

Appeals have been perfected by both plaintiffs and defendants from rulings on defendants' demurrers to plaintiffs' amended petition. The appeals have been consolidated for review.

The amended petition, omitting the caption, reads:

"That on the 28th day of September, 1952, at about 3:15 o'clock p. m., at the Arcadia Theater in the City of Wichita, Kansas, at a meeting of the International Association of Machinists, Local 834, the defendant, P. L. Seimiller, a representative of the National organization of the International Association of Machinists, and whose residence is Chicago, Illinois, while making a speech before Local 834 as aforesaid, called the above named plaintiffs by name and stated in said speech that they were traitors and affiliated with the CIO, and were trying to break up the Local 834 of the International Association of Machinists; that all of the above named plaintiffs are members of Local 834 of the International Association of Machinists.

"Plaintiffs further allege that said remarks were slanderous, defamatory and false, and were known by the defendants to be false at the time they were made.

"Plaintiffs further allege that as a result of said slanderous and defamatory statements, they have been damaged in the sum of $50,000.00.

"Plaintiffs further allege that P. L. Seimiller at all times hereinabove mentioned, was the agent and a representative of the defendant, Grand Lodge of International Association of Machinists, an unincorporated association of individuals, and was acting under the direction and control of said Grand Lodge of International Association of Machinists, and within the scope of his authority.

"WHEREFORE, plaintiffs pray the court for a judgment against the defendants in the sum of $50,000.00 actual damages and $50,000.00 punitive damages, and for their costs."

We shall continue to refer to the parties as plaintiffs and to the separate defendants as Seimiller and the Grand Lodge where necessary to distinguish between defendants.

The district court overruled the demurrer of Seimiller to plaintiffs' amended petition and Seimiller has appealed from that ruling. The court sustained a demurrer of the Grand Lodge to the amended petition and dismissed the action as to it. From that ruling plaintiffs have cross-appealed. Simply stated, the contention of plaintiffs is the amended petition states a cause of action against both defendants and defendants insist it does not state a cause of action against either of them.

If the amended petition states a cause of action against Seimiller we shall next determine whether it also states a cause of action against the Grand Lodge. On the other hand if no cause of action is stated against Seimiller, the alleged agent of the Grand Lodge, none is stated against the Grand Lodge. We shall first consider the order overruling Seimiller's demurrer.

In actions involving libel or slander the temptation quite naturally exists to write a treatise on the subject. We shall attempt to hold that tendency within reasonable bounds. The term "libel" is not defined by our civil code. (*Jerald v. Houston,* 124 Kan. 657, 662, 261 Pac. 851.) Neither is the term "slander" defined. Reference, therefore, must be made to the common law to determine its meaning. Courts have defined actions involving slander into slander *per se* and slander *per quod.* In actions based on libel or slander *per se* no specific or special damages need be alleged or proved. The reason is that words libelous or slanderous *per se* are words which, intrinsically, without innuendo, import injury. They are words from which damage, by consent of men generally, flows as a natural consequence. From such words malice is implied and damages are conclusively presumed to result. It is for this reason that courts take judicial notice of damage resulting from libel or slander *per se.* (*Pollard v. Lyon,* 91 U. S. 225, 23 L. ed. 308; *Thompson v. Osawatomie Publishing Co.,* 159 Kan. 562, 564, 156 P. 2d 506.)

In the Pollard slander case it was said:

"Certain words, all admit, are in themselves actionable, because the natural consequence of what they impute to the party is damage, as if they import

a charge that the party has been guilty of a criminal offense involving moral turpitude, or that the party is infected with a contagious distemper, or if they are prejudicial in a pecuniary sense to a person in office or to a person engaged as a livelihood in a profession or trade; but in all other cases the party who brings an action for words must show the damage he or she has suffered by the false speaking of the other party." (p. 227.)

The pertinent allegation is that Seimiller,

". . . while making a speech before Local 834 as aforesaid, called the above named plaintiffs by name and stated in said speech that they were traitors and affiliated with the CIO, and were trying to break up the Local 834 of the International Association of Machinists. . . ."

The amended petition alleged those remarks were false and were known by defendants to be so when made. We, therefore, turn to an examination of the quoted remarks.

Is the statement slanderous *per se?* Plaintiffs argue the quotation contains three such separate statements. They attempt to divide the alleged defamatory quotation as though three separate statements had been made, as follows: Plaintiffs (1) were traitors (2) were affiliated with the CIO and (3) were trying to break up local 834 of the International Association of Machinists (of which local the petition alleges they were members).

We know of no authority, and plaintiffs cite none, which holds that a statement charging a person with being a member of the CIO constitutes slander *per se*. That is likewise true of the statement that plaintiffs were trying to break up local 834, of which they were members.

Is the word "traitor" as here used slander *per se?* It is generally held that whether a statement is libelous or slanderous *per se* is, in the first instance, a question of law for the court. (*Carver v. Greason,* 104 Kan. 96, 177 Pac. 539, *Jerald v. Houston,* 124 Kan. 657, 261 Pac. 851; *Brinkley v. Fishbein,* 134 Kan. 833, 835-836, 8 P. 2d 318; *Doherty v. Kansas City Star,* 144 Kan. 206, 59 P. 2d 30; *Little v. Allen,* 149 Kan. 414, 87 P. 2d 510; *Caldwell v. Hayden,* 42 App. D. C. 166.)

It is for the court to determine whether a certain word or words as employed reasonably admit of the meaning ascribed to them. (*Doherty v. Kansas City Star,* supra.) If they are reasonably susceptible of constituting slander *per se* the court leaves it to the jury to say how the word or words were in fact understood. (*Brinkley v. Fishbein,* supra, *Steenson v. Wallace,* 144 Kan. 730, 734, 62 P. 2d 907.) In connection with the court's duty it generally is held that in determining whether a writing or utterance is defamatory *per se*

each part thereof must be considered in its relation to the others rather than separately. In other words, the entire statement must be fairly and reasonably construed as a whole. (*Jerald v. Houston, Brinkley v. Fishbein,* p. 836, *Steenson v. Wallace,* p. 734, *Little v. Allen,* omnia supra.) Closely related to and actually a part of the foregoing principle of interpretation is the rule that words or phrases must not be taken out of context. The rule has its roots in justice. Words, which standing alone, would be actionable may not be so when taken in connection with their context. (Townshend on Slander and Libel, 4th ed., p. 127; 33 Am. Jur., Libel and Slander, § 87; *Lorenz v. Towntalk Pub. Co.,* —— Mo. ——, 261 S. W. 2d 952, (1953); *Dressler v. Mayer,* 22 N. J. Super 129, 91 A. 2d 650, (1952); *Caldwell v. Hayden,* 42 App. D. C. 166.)

Plaintiffs place primary emphasis on the word "traitor." In the instant case we have no hesitancy in concluding the single alleged defamatory statement may not be broken down into three separate and distinct parts so as to isolate the word "traitor" from its context. We think it may not be considered as a separate and independent statement which charged plaintiffs with being guilty of a crime. Much less can it be interpreted as meaning plaintiffs were guilty of treason to their country. Treason in its criminally acceptable meaning is defined in Webster's New International Dictionary, 2d ed., unabridged, as:

"In the United States treason against the United States is defined by the Constitution (Art. III, sec. 3) to consist 'only in levying war against them, or in adhering to their enemies, giving aid and comfort to them.' Most of the State constitutions similarly define treason against the State."

Fairly analyzed we think the statement clearly conveys the idea that plaintiffs were affiliated with the CIO, were traitors to local 834 of the International Association of Machinists and were trying to break up such local union. That does not import treason or any other crime.

It also will be observed the petition in nowise alleged the statement injured or tended to injure plaintiffs' reputation in any *office, profession* or *trade.* Here we need not be concerned with possible inferences or speculate relative to the intended purpose of the alleged defamatory statement. The amended petition leaves no room therefor. It expressly states its purpose was "to break up the Local 834." That purpose may be wrongful but the statement is not slanderous *per se* and plaintiffs cite no authority to the contrary.

The general rule concerning the sufficiency of allegations with respect to libel *per se* involving an office, profession or trade is well stated in *Dyer v. MacDougall,* 93 F. Supp. 484, (1950), citing numerous cases, as follows:

"One suing for slander by words directly tending to injure or prejudice his reputation in way of office, profession, or trade *must allege and prove* that he held such office or carried on profession or trade when words were published and that words were spoken in reference *to his conduct therein.*" (Headnote 8.) (Our italics.)

To the same effect are *Shakun v. Sadinoff,* 272 App. Div. 721, 74 N. Y. S. 2d 556, (1947), cited in the Dyer case, and many others. See, also, Gatley on Libel and Slander, 3d ed., p. 61, for fuller statement of the general rule.

The defendant Seimiller further contends the statement was not a general publication but was made only in the union meeting and as such was conditionally privileged. His demurrer was also based on other grounds. In view of what has been said heretofore we need not extend the opinion relative to slander *per se.*

Did the amended petition state a cause of action for slander *per quod?* In order to constitute a cause of action for slander *per quod* the special, the particular, damages which resulted from the alleged defamation must be alleged. A mere allegation of general damages, as in the instant case, is insufficient. (*Thompson v. Osawatomie Publishing Co.,* 159 Kan. 562, 156 P. 2d 506.)

No cause of action having been stated against Seimiller, the alleged agent of the Grand Lodge, for slander *per se,* or *per quod,* the amended petition was insufficient as against the Grand Lodge.

The order overruling the demurrer of Seimiller, therefore, is reversed. The order sustaining the demurrer of the Grand Lodge is affirmed. It is so ordered.