**Jackie ROSS, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**Civ. A. No. 89–2084–O.**

United States District Court,
D. Kansas.

Jan. 17, 1990.

Luis Mata, Evans & Mullinix, P.A., Kansas City, Kan., for plaintiff.

Robert F. Rowe, Jr., McAnany, Van Cleave & Phillips, P.A., Lenexa, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the cross motions of plaintiff and defendant for summary judgment. Jackie Ross ("Ross") has brought suit against Wal–Mart Stores, Inc. ("Wal–mart") for false arrest, false imprisonment, and slander. Wal–Mart contends plaintiff's lawsuit is barred by a release signed by Ross. Ross claims the release is invalid because it was signed while she was under duress. Defendant presents the alternative arguments that it is entitled to the merchant's defense, and that any statements made by its representatives are qualifiedly privileged. For the reasons stated below, we will deny the summary judgment motions of plaintiff and defendant.

In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th

Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2552.

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations of denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

The pertinent facts are as follows. On January 28, 1988, Wal–Mart employees reported that they observed plaintiff attempt to conceal two video cassette recorder (VCR) tapes, and deposit a blue shirt and lip balm in her purse. Defendant's loss prevention report states that Ross removed the shirt from her purse while she was within the confines of the store. The employees detained Ross after she proceeded through a check-out lane because they believed she had shoplifted the lip balm. Ross was forced to wait five to ten minutes at the front of the store. During this time, a store employee accused Ross of attempting to steal underwear. Plaintiff states that the accusation was made in a loud manner and overheard by other customers. After the accusation, plaintiff, as well as her sibling and mother, were led by three Wal–Mart employees to an upstairs office in the rear of the store.

Ross was confined to the office for approximately twenty minutes. In the office, a female Wal–Mart representative searched plaintiff's jacket pockets and purse. Wal–Mart's loss prevention report indicates that lip balm was recovered from Ross' purse. Ross contends she was threatened with criminal arrest if she refused to tell the truth. Wal–Mart states that plaintiff's mother did not ask any questions during her daughter's confinement. Plaintiff claims that her mother's request to call a lawyer was denied by defendant's employees. Wal–Mart representatives allegedly informed Ross' mother that her daughter would be arrested if an attorney was called. Defendant denies its employees forbade use of the telephone.

A release was read in part to plaintiff by one of Wal–Mart's representatives. William Spradlin, a uniformed Kansas City, Kansas police officer, advised plaintiff that she could not sue defendant if she signed the release. Ross states that a Wal–Mart employee repeatedly threatened her, in the presence of the officer, with criminal arrest if she did not sign the release. Plaintiff adds she was instructed that her signature would simply provide for her "release" from defendant's custody. Ross signed the document which stated that she agreed to release Wal–Mart from all causes of action "in exchange and consideration for Wal–Mart Stores, Inc., agreeing not to file suit" against her.

▮▮▮ Defendant argues that the release signed by plaintiff bars her from bringing suit against Wal–Mart. Ross claims that the release cannot be enforced because it was procured by threats of criminal arrest that overcame her will. A contract obtained under duress or undue influence is invalid. *Washington v. Classen*, 218 Kan. 577, 580, 545 P.2d 387, 391 (1976). Some doubt remains as to whether a threat of prosecution is *per se* coercive. *Merrel v. Research & Data, Inc.*, 3 Kan.App.2d 48, 50, 589 P.2d 120, 122 (1979).[1] The para-

---

1. Upon its initial inquiry, the Supreme Court of Kansas left unanswered whether it was "ever lawful for a party to force the signing of a contract ... against the will of another, by us-

ing or threatening to use the machinery of the law." *Heaton v. Norton County State Bank,* 59 Kan. 281, 294, 52 P. 876, 887 (1898). The Court later discouraged "resort to such pressure" in

mount question in cases involving threatened arrest is whether the party threatened was, by such intimidation, deprived of the exercise of her free will. *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 265, 133 P.2d 149, 155 (1943). Once a plaintiff establishes substantial evidence of duress, the question of whether the threats resulted in a deprivation of free will "is always a question for the determination of the jury." *Id.*

■ Wal–Mart contends that there is insufficient evidence to establish duress. In support of its contention, defendant argues that the case at bar closely mirrors *White v. General Motors Corp.,* 699 F.Supp. 1485 (D.Kan.1988). In *White,* the two plaintiffs alleged their former employer, General Motors, provided them with two options: sign releases or be fired. After two weeks, both plaintiffs signed the releases. General Motors thereafter asserted that the releases barred plaintiffs' lawsuit. *Id.* at 1486. Judge Saffels of this Court stated:

Plaintiffs here did not have to sign the releases; they could have chosen to allow GM to fire them without severance pay, and then pursued GM in court … They did not select this alternative. After two weeks' reflection and at least some attempt to contact attorneys, they chose to take GM's offer.

*Id.* at 1487. The court rejected White's duress argument. Wal–Mart asserts that Ross' argument should likewise be rejected because she was simply presented with two similar alternatives: sign a release or face a civil suit for conversion.

The instant case, however, presents a factual scenario much different than *White.* Ross had neither two weeks to reflect nor the opportunity to confer with an attorney. In fact, she claims she was not even permitted to make a telephone call to an attorney. Ross' mother was allegedly informed that her daughter would be arrested if she (plaintiff's mother) called a

lawyer. Plaintiff adds that a Wal–Mart employee repeatedly threatened her, in the presence of a uniformed police officer, with criminal arrest if she did not sign the release. Ross also states she believed she would "go to jail" had she refused to sign the release and therefore signed it to avoid incarceration. When viewed in a light most favorable to plaintiff, we believe the evidence provides substantial proof of duress. Accordingly, the question of whether Ross was deprived of her free will must be decided by a jury. The cross motions of plaintiff and defendant with regard to the validity of the release will be denied.

In the alternative, defendant argues that the merchant's defense, as set forth in K.S.A. 21–3424(3), bars plaintiff's claims for false imprisonment and false arrest. K.S.A. 21–3424(3) provides as follows:

Any merchant, his agent or employee, who has probable cause to believe that a person has actual possession of and (a) has wrongfully taken or (b) is about to wrongfully take merchandise from a mercantile establishment may detain such person … for the purpose of investigating the circumstances of such possession.

K.S.A. 21–3424(3) applies to civil actions for false imprisonment. *Codner v. Skaggs Drug Centers, Inc.,* 224 Kan. 531, 533, 581 P.2d 387, 389 (1978).

Defendant contends that its employees had probable cause to detain Ross after they observed plaintiff attempt to conceal two video cassette recorder (VCR) tapes, and later deposit a blue shirt and lip balm in her purse. Although Ross removed the shirt from her purse before proceeding past the check-out lanes, Wal–Mart representatives reported the discovery of the lip balm in her purse. Plaintiff denies that she shoplifted or attempted to shoplift any items. Accordingly, the applicability of the merchant's defense depends upon the reso-

---

*Williamson H.F. Co. v. Ackerman,* 77 Kan. 502, 507, 94 P. 807, 811 (1908). Twenty years after *Ackerman,* the court noted in dictum that a threat to use the law to its fullest extent against a person who has wrongfully injured another is not duress. *W. Paving Co. v. Sifers,* 126 Kan.

460, 465, 268 P. 803, 807 (1928). A question of fact remains as to whether Ross wrongfully injured Wal–Mart by shoplifting merchandise. While Wal–Mart employees allegedly accused Ross of stealing underwear and lip balm, she denies that she shoplifted these items.

lution of a factual dispute, making summary judgment inappropriate.

■■ Defendant also moves for summary judgment of Ross' slander claim. Ross states that a store employee accused her of theft. These accusations were allegedly made in a loud manner, and overheard by customers. Plaintiff adds that the employee threatened her in public with arrest. Words falsely imputing a person with a criminal offense are actionable *per se. Bradshaw v. Swagerty,* 1 Kan.App.2d 213, 215, 563 P.2d 511, 513 (1977); *Bennett v. Seimiller,* 175 Kan. 764, 768, 267 P.2d 926, 929–30 (1954). Words slanderous *per se* are those which intrinsically, without innuendo, import injury. *Sweaney v. United Loan & Finance Co.,* 205 Kan. 66, 71, 468 P.2d 124, 129 (1970). Such words form statements from which damage, by consent of men generally, flows as a consequence. *Bennett v. Seimiller, supra,* 175 Kan. at 768, 267 P.2d at 929.

■ Wal–Mart contends that any slanderous statements made by its employee are privileged. The determination of whether a statement is privileged is a question of law to be decided by the court. *Turner v. Halliburton Co.,* 240 Kan. 1, 7, 722 P.2d 1106, 1113 (1986). Privileged communications in defamation actions are divided into two classes: absolute privilege and qualified privilege. *Bradford v. Mahan,* 219 Kan. 450, 456, 548 P.2d 1223, 1228 (1976). Defendant asserts that statements of its representative are qualifiedly privileged. A statement is qualifiedly privileged when it is made on an occasion which furnishes legal excuse for its utterance. *Kennedy v. Mid–Continent Tel., Inc.,* 193 Kan. 544, 550, 394 P.2d 400, 405 (1964). The privilege is granted to those with a special interest or duty in the subject matter of the communication. *Redmond v. Sun Publishing Co.,* 239 Kan. 30, 36, 716 P.2d 168, 172 (1986). Such a communication must be made in good faith, without actual malice and with reasonable or probable grounds for believing them to be true. *Munsell v. Ideal Food Stores,* 208 Kan. 909, 920, 494 P.2d 1063, 1073 (1972).

■ Wal–Mart argues that its employee's statements are qualifiedly privileged because they were made while the employee was investigating a criminal matter. A Kansas Pattern Jury Instruction states that a "communication involving matters in connection with inquiries regarding the commission of crime is qualifiedly privileged." PIK 2d 14.54. The jury instruction adds that the plaintiff asserting a qualifiedly privileged statement is defamatory must prove "actual malice on the part of the defendant." *Id.* Proof of malice in defamation actions when a qualified privilege is found to exist requires a plaintiff to prove that the publication was made with knowledge that the defamatory statement was false or with reckless disregard of whether it was false. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964); *Schulze v. Coykendall,* 218 Kan. 653, 661, 545 P.2d 392, 399 (1976).

■ A finding of actual malice would require a determination of the Wal–Mart employee's state of mind. When resolution of a dispositive issue necessitates an inquiry into one's state of mind, a court should be cautious in granting a motion for summary judgment. *Gleichenhaus v. Carlyle,* 226 Kan. 167, 169, 597 P.2d 611, 613 (1979); *Bowen v. Westerhaus,* 224 Kan. 42, 45, 578 P.2d 1102, 1104–05 (1978). The existence of malice is ordinarily a question of fact for the jury. *Ruebke v. Globe Communications Corp.,* 241 Kan. 595, 605, 738 P.2d 1246, 1254 (1987). In this instance, Wal–Mart's loss prevention report indicates that Ross attempted to steal four items. Plaintiff denies that she shoplifted or attempted to shoplift any merchandise. Without resolution of this factual dispute, we cannot determine whether the defendant's employee made the accusations with actual malice. Accordingly, Wal–Mart's summary judgment motion with regard to Ross' slander claim is denied.

IT IS THEREFORE ORDERED that the cross motions of plaintiff and defendant for summary judgment are hereby denied.